1
2
3                      UNITED STATES DISTRICT COURT
4                     WESTERN DISTRICT OF WASHINGTON
                                  AT TACOMA
5

6   JACKIE L. HAWKINS,

7                            Plaintiff,          Case No. 3:11-CV-05701-KLS

8          v.                                    ORDER AFFIRMING DEFENDANT'S
                                                 DECISION TO DENY BENEFITS
9   MICHAEL J. ASTRUE, Commissioner of
    Social Security,
10
                             Defendant.
11

12

13
           Plaintiff has brought this matter for judicial review of defendant's denial of her
14
    applications for disability insurance and supplemental security income ("SSI") benefits.
15
    Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the
16
    parties have consented to have this matter heard by the undersigned Magistrate Judge.  After
17
    reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons
18
    set forth below, defendant's decision to deny benefits should be affirmed.
19
                          FACTUAL AND PROCEDURAL HISTORY
20
           On July 24, 2007, plaintiff filed applications for disability insurance and SSI benefits,
21
    alleging disability as of May 17, 2007, due to a back injury.  See Administrative Record ("AR")
22
    14, 97, 103.  Her applications were denied upon initial administrative review and on
23
    reconsideration.  See AR 14, 60, 65, 67.  A hearing was held before an administrative law judge
24
    ("ALJ") on November 20, 2009, at which plaintiff, represented by counsel, appeared and
25

26

    ORDER - 1

testified, as did a medical expert and a vocational expert. See AR 30-55.

On December 16, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 14-25. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 14, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On September 6, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on November 8, 2011. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's credibility; and (3) in evaluating the lay witness evidence in the record. For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and thus finds that defendant's decision to deny benefits should be affirmed.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational

ORDER - 2

interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

ORDER - 3

the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her.  Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected."  Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."  Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."  Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Schneider

Plaintiff challenges the ALJ's following findings:

[The c]laimant received a consultative examination by Robert E. Schneider, Ph.D., in July 2008. Ex. 13F. Dr. Schneider's impression was dysthymia, major depressive disorder, recurrent versus chronic, passive dependent personality characteristics versus personality disorder, and a current [global assessment of functioning ("]GAF["]) score of 48.[1] Ex. 13F/7.  Dr. Schneider concluded that testing results showed [the] claimant had considerable personality disorganization, fragile ego defenses, depression, anxiety, and

---

[1] In a footnote the ALJ further stated that "[b]ased on the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition-Text Revision (DSM-IV-TR), a GAF rating of 41-50 constitutes serious symptoms or any serious impairment in social, occupational or school functioning." AR 21, n.1; see also Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007); Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007).

ORDER - 4

diminished psychological energy. Ex. 13F/7.  Over six months later, in February 2009, Dr. Schneider offered his opinion that, due to depression, a fragile ego defense, limited stress tolerance, and limited coping ability, it is unlikely [the] claimant could tolerate the typical stresses and demands of gainful employment. Ex. 13F/9.  The undersigned accords this opinion little weight as it was rendered in February 2009, however, Dr. Schneider actually evaluated [the] claimant in July 2008 and the record does not show Dr. Schneider ever examined or treated [the] claimant after July 2008.  Moreover, it appears Dr. Schneider did not review [the] claimant's treatment records and unduly relied on [the] claimant's subjective statements.

AR 21.  Plaintiff argues this is not a valid basis for rejecting Dr. Schneider's opinion.  But while not all of the reasons the ALJ gave here for rejecting that opinion are legitimate, the Court finds the ALJ did not err overall in rejecting it.

First, the Court agrees the ALJ erred in not explaining how a six-month period between when Dr. Schneider first examined plaintiff and when he issued his evaluation report, called into question the findings contained in that report.  That is, the ALJ has pointed to no medical or other evidence in the record to show anything had changed in plaintiff's mental health condition during that period to make Dr. Schneider's report inaccurate or otherwise suspect.  Second, there is no requirement that an examining medical source must first review a claimant's treatment records before issuing an opinion based on that source's own examination.  Indeed, by definition an examining medical source's opinion is one based on the results of the examination performed by the medical source himself or herself.  Nor does the ALJ state what significance, if any, those records have with respect to Dr. Schneider's evaluation report.

On the other hand, the Court finds it was not improper for the ALJ to reject the opinion of Dr. Schneider on the basis that he relied unduly on plaintiff's subjective complaints.  A medical source's opinion premised on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility, which the record does in this case for the reasons discussed in greater detail below. See Tonapetyan, 242 F.3d at 1149; see

ORDER - 5

also Morgan v. Commissioner of the Social Security Admin., 169 F.3d 595, 601 (9th Cir. 1999).

It is true that the ALJ did not expressly point to specific evidence in the record to support his statement that Dr. Schneider unduly relied on plaintiff's subjective complaints, and that Dr. Schneider's evaluation report contained the results of both psychological testing and a mental status examination.[2] See AR 326-27.

As noted above, though, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes, 881 F.2d at 755. Attached to Dr. Schneider's evaluation report is a form Dr. Schneider also completed at the time, in which he checked boxes indicating plaintiff had significant limitations in a number of mental functional areas, and which contained his opinion that "[d]ue to depression, fragile ego defense, limited stress tolerance [and] limited coping ability," it was "unlikely she could tolerate the typical stresses [and] demands of gainful employment." AR 330. However, the "IMPRESSIONS" section of evaluation report itself makes clear that – despite the psychological testing and mental status examination performed – Dr. Schneider based his opinion of plaintiff's mental health functioning and ability to perform in the workplace largely on her subjective complaints:

> Jackie indicates that she has been depressed her whole life. She was physically and sexually abused at a very early age and for a sustained period of time. She indicates that she has never had psychological treatment regarding this abuse. This history has been played out in four different abusive relationships. She has three children from three different men. Both of her daughters are difficult if not abusive to her and she is now raising her 4 year old and 2 year old granddaughters.

---

[2] Performance of a mental status examination on its own has been found to be a proper basis on which to base a medical diagnosis. See Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury."). In addition, "when mental illness is the basis of a disability claim," objective medical evidence "may consist of the . . . observations of professionals trained in the field of psychopathology." Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000)) (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent evidence).

She indicates that she was a C/D student in high school. While she graduated, she has performed entry level work for her whole working life and is unable to return to this type of work because of degenerative disk disease and osteoarthritis in her back.

She states that she has been depressed for many years and describes herself as extremely depressed. The Beck Depression Inventory-II is a symptom checklist self-report measure. She describes significant vegetative, behavioral and emotional symptoms of depression. The MMPI-2 indicates considerable personality disorganization, fragile ego defenses, depression, anxiety and diminished psychological energy. She is seeing a counselor to help her deal with her daughter and also to help her daughter acquire some self-control. Jackie's depression is not being dealt with in therapy and she is not being prescribed antidepressant medications. She requires aggressive treatment with antidepressant medications that address anxiety and diminished psychological energy. She requires something to address her sleep which is quite impaired. Loss of sleep exacerbates depression. She also requires psychological treatment to help her deal with the multiple stresses in her life and to gradually deal with her history of abuse and the impact it has had upon her self-esteem, self-concept and the choices that she has made in her life which reflect the way she sees herself.

AR 327-28.

As can be seen, even the psychological testing Dr. Schneider performed – i.e., the Beck Depression Inventory II – is based in significant part on plaintiff's own self-reporting. For the same reasons, the ALJ did not err in failing to adopt "the potentially significant work-related mental functional limitations as indicated by the GAF score of 48." ECF #11, p. 6; see Pisciotta, 500 F.3d at 1076 n.1 (GAF score is "a *subjective* determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning'") (citation omitted) (emphasis added). In addition, while a GAF score is "relevant evidence" of the claimant's ability to function mentally, "it is not essential" to the accuracy of the ALJ's assessment of a claimant's residual functional capacity. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). Thus, the mere fact that a low GAF score is assessed is not in itself sufficient to establish

ORDER - 7

disability. See Howard, 276 F.3d at 241 (failure to reference GAF score in assessing residual

functional capacity "standing alone" does not make that assessment inaccurate).

B.    Dr. Rangole

Plaintiff also challenges the following further findings made by the ALJ:

> After examining [the] claimant in October 2007, [Ashutosh S.] Rangole[, M.D.,] opined that [the] claimant could be expected to stand or walk in a regular eight hour workday [and] would be limited to two hours due to decreased range of motion of knee flexion and back flexion and extension. Ex. 5F/4.  He further concluded that [the] claimant could be expected to sit up to two hours in an eight hour workday due to decreased back flexion and extension. Ex. 5F/4.  Otherwise, he concluded [the] claimant had the residual functional capacity for light exertion with some postural limitations but no manipulative or environmental limitations. Ex. 5F/4.  The undersigned has considered Dr. Rangole's opinion, and grants great weight to his opinion regarding [the] claimant's lifting, postural, and manipulative limitations, but little weight to his opinion regarding [the] claimant's residual functional capacity to sit, stand and walk.  First, Dr. [David] Ru[h]lman[, the medical expert who testified at the hearing,] persuasively explained that Dr. Rangole's restrictions on [the] claimant's ability to stand, walk and sit were likely related to [the] claimant's being in a recovery period from the back strain she sustained in May 2007.  Additionally, Dr. Rangole based his conclusion on the results of [the] claimant's flexion and extension while, at the same time, he noted the results of these tests were affected by [the] claimant's poor effort.

AR 21.  Plaintiff argues the ALJ's reasons for rejecting Dr. Rangole's opinion as to her ability to

stand, walk and sit here are improper.  The Court disagrees.

Plaintiff asserts Dr. Ruhlman did not actually testify that the standing, walking and sitting

restrictions assessed by Dr. Rangole "were likely related to [her] being in a recovery period from

the back strain she sustained in May 2007." Id.  It is true that Dr. Ruhlman did not specifically so

testify, that is he did not actually refer to "a recovery period" as noted by the ALJ.  However, Dr.

Ruhlman did testify that he found "it very difficult to understand" plaintiff's back pain given that

x-rays showed "minimal abnormalities." AR 48.  Dr. Ruhlman further found it a little confusing

that plaintiff was claiming an inability to sit and walk "for any period of time," in light of the fact

ORDER - 8

that comments were made "by several in the record that it[ was] remarkable that she ha[d] all this pain but still" was capable of taking care of "children who initially were, during her care, ages one to three, obviously requiring lifting and direction, that sort of thing." AR 49.

Dr. Ruhlman's hearing testimony then continued in relevant part as follows:

> [Dr. Ruhlman] . . . I was addressing [Dr. Rangole's] consultative exam[ination] that was done in '07 and contrary to what has been reported today, that physician claimed that she should be expected to be able to stand or walk in an eight-hour day for two hours.
> [ALJ] Wasn't that exam done shortly after she had had the strange sprain injury in, in the, the Spring of 2007, then? Correct?
> [Dr. Ruhlman] Yes.
> [ALJ] I read that and I thought it was probably, probably limited -- it's hard for me to project that, those results forward for more than a year after the date of the alleged onset of disability because it did seem to be secondary to, to the back strain sprain, which was, which was diagnosed and treated shortly after, shortly before that. I guess treatment actually went on through December of 2007 for the back strain.
> [Dr. Ruhlman] Yes, that is a correct observation. . . .
> [ALJ] Did, do you think that the, does it appear to you that based on the longitudinal history that that physical evaluation that was performed in 2007 is still reasonably accurate as far as her physical capabilities?
> [Dr. Ruhlman] Well, I'd have to take issue and question one of the comments that he made, namely, that I don't understand, he says the number of hours the claimant could be expected in an eight-hour workday could be limited to two hours due to decreased back flexion and extension, unclear to me what he's trying to convey. There's a lot, well, there is some information that since then -- she's been through a lot in terms of attempts to relieve her subjective symptoms, namely, pain. Apparently, nothing really seems to help. And again, any x-ray abnormalities do not support the severity of the problem that is described.

AR 49-50. Dr. Ruhlman's testimony, therefore, is essentially consistent with the findings of the ALJ – i.e., that the limitations assessed by Dr. Rangole did not last beyond a period of recovery following the May 2007 back sprain – in that Dr. Ruhlman found the record was largely lacking in objective clinical support for such limitations, and those limitations were contrary to evidence of fairly strenuous activities plaintiff engaged in subsequent to the functional assessment given by Dr. Rangole. See, e.g., AR 325, 437, 448; see also Lester, 81 F.3d at 830-31 (opinion of non-

ORDER - 9

examining physician constitutes substantial evidence if it is consistent with other independent evidence); Tonapetyan, 242 F.3d at 1149.

The ALJ also did not err in rejecting Dr. Rangole's assessed standing, walking and sitting limitations on the basis that Dr. Rangole based them on the flexion and extension testing results, which "were affected by [plaintiff's] poor effort." AR 21. Plaintiff argues that the ALJ did not point to any evidence Dr. Rangole disregarded his testing results or failed to factor them into his functional assessment, and that Dr. Rangole only noted her lumbar extension and flexion "likely" were limited in part to poor effort. AR 265. As to plaintiff's first point, the flip side of that also is true. That is, there is no indication Dr. Rangole factored her poor effort – or that he factored it correctly – into his functional assessment, and thus the ALJ's interpretation of Dr. Rangole's findings and opinions are equally rational, in which case the Court is obligated to uphold that interpretation See Allen, 749 F.2d at 579. With respect to plaintiff's second point, the Court finds Dr. Rangole's use of the term "likely" to be without real significance here, as he clearly felt there was a strong probability that she exhibited poor effort during testing otherwise he would not have noted that fact in his written report.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

ORDER - 10

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ discounted plaintiff's credibility in part because her allegations of disabling pain and mental health symptoms were inconsistent with the objective medical evidence in the record. See AR 19-20; Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (LJ's determination that claimant's complaints are "inconsistent with clinical observations" can satisfy clear and convincing requirement). As discussed above, the ALJ did not err overall in evaluating that evidence. Further, while a claimant's pain testimony may not be rejected "*solely* because the degree of pain alleged is not supported by objective medical evidence," as discussed below, the ALJ provided other valid reasons for discounting plaintiff's credibility in this case. Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)) (emphasis added); see also Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th

Cir. 1995) (finding that while holding in <u>Bunnell</u> was couched in terms of subjective complaints of pain, its reasoning extended to claimant's non-pain complaints as well).

The ALJ also discounted plaintiff's credibility for the following reasons:

> [The c]laimant's treatment for her back pain has been generally routine and conservative in nature, and [the] claimant has reported that her pain responds well to MS Contin and the use of a TENS unit. See Ex. 14F/3-4; 15F/16; 17F/7. [The c]laimant has reported periods of increased pain due to tripping over a cement block (Ex. 12F; 14F) and packing and moving her residence. Ex. 15F/11-12. [The c]laimant received brief chiropractic treatment for her back strain in 2007. Ex. 3F; 4F/6. She also received periodic physical therapy and lumbar epidural and facet joint injections that she reported did not afford much pain relief. Ex. 12F; 14F/4. In October 2008, [the] claimant reported that most days her back pain was mild and tolerable with medications and that a TENS unit was helpful. Ex. 14F/4. Her provider, Abraham Abu, PA-C, noted that she tolerated both Flexeril and MS Contin fairly well and she reported no adverse affects from the medication. Ex. 14F/4.

AR 20. Plaintiff has not challenged this basis for finding her to be not fully credible, nor does the Court find any error on the part of the ALJ in doing so. <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); <u>Meanal v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious medical treatment for supposedly excruciating pain); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation); <u>see also</u> <u>Morgan</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ next discounted plaintiff's credibility on the following basis:

> . . . [The] claimant's daily activities are quite involved and suggest a high level of functioning. [The c]laimant reported that she has taken care of her

granddaughters since they were born, as their mother has cerebral palsy and hearing problems and is not capable of raising the children. Ex. 12F/3. During her days she reads to her granddaughters, she walks her younger granddaughter to the bus stop, and she fixes simple meals for the children. [The c]laimant reported that she is able to cook, shop, clean, maintain her laundry, manage her money and pay her bills. Ex. 13F/4; 9E. At a physical therapy evaluation in August 2008, [the] claimant reported that she continued to do all activities in spite of her pain, and she was presently taking care of her grandchildren who were both under the age of five. Ex. 12F/28. Again, in November 2008, [the c]laimant reported that she was able to do her activities of daily living in spite of her pain. Ex. 17F/6.

AR 22-23. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." Id. Under this ground, a claimant's testimony may be rejected if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick , 157 F.3d at 722. Under the second ground, a claimant's activities of daily living can "contradict his [or her] other testimony." Id.

Plaintiff argues the ALJ failed to make any finding that the activities described above consumed a substantial part of her day or were transferable to a work setting. As just noted, however, an ALJ also may discount a claimant's credibility where his or her activities of daily living contradict his or her other testimony. As plaintiff herself points out, she has alleged being very limited in her ability to perform daily activities and unable to care for her granddaughters on

ORDER - 13

her own. See ECF #11, p. 14 (citing AR 154-56). But as the ALJ noted above, plaintiff's reports to various medical sources in the record belie these allegations.

In early June 2007, plaintiff was noted to be "single, but raising two grandchildren." AR 216. In late October 2007, although plaintiff reported being "able to do cooking and cleaning with the help of her family," she also stated that she could lift each of her grandchildren. AR 264. In early April 2008, plaintiff "reported that caring for her grandchildren full-time mean[t] that she could never harm herself." AR 431. In late July 2008, she reported that she had "been caring for her two granddaughters, ages 4 and 2, since they were born," and that she was "able to concentrate and [could] get things done," including cooking, shopping, cleaning (albeit "a little at a time"), maintaining her laundry, managing her money and paying her bills. AR 324-25. In late August 2008, plaintiff reported that while her pain kept her "from performing activities as long as she would like," she "continue[d] to do all activities in spite of the pain," and was "taking care of her grandchildren who [we]re both under five years old." AR 311.

In late October 2008, plaintiff reported being "able to engage in completing activities of daily living with minimal effort." AR 338. In early November 2008, she reported that she was "still capable of carrying out her activities of daily living," despite also stating that many of them are the ones that exacerbate her pain. AR 437. In mid-November 2008, plaintiff reported taking "care of her 2 grandchildren almost full-time."[3] AR 335. In late December 2008, she reported getting "reasonable functional benefit from [her pain medications] and ha[d] been able to help her grandkids at home." AR 334. Plaintiff further reported in late January 2009, that she was "going to be helping [her brother who was recently diagnosed with cancer] attend appointments and follow up care" (AR 370), in early February 2009, that she had "a busy schedule now" (AR

---

[3] This self-report and her report from early April 2008 noted above, furthermore, contradicts plaintiff's contention that there is no evidence in the record she spent a substantial part of her day performing activities of daily living.

369), and in mid-March 2009, that she was "tending to her grand daughters [sic] health needs" (AR 367). As such, the ALJ did not err in relying on plaintiff's activities of daily living to find her not fully credible.

The ALJ next discounted plaintiff's credibility because:

The record suggests [the] claimant sought mental health treatment in order to maintain eligibility for public benefits rather than in a genuine attempt to obtain relief from the allegedly disabling symptoms. A note from April 2008 shows that [the] claimant's treatment goal was to maintain financial support from the Department of Social and Health Services of Washington State. Ex. 16F/3. In November 2008, [the] claimant reported she was not sure that she needed counseling. Ex. 16F/3.

[The c]laimant's credibility is somewhat called into question by strong evidence of misrepresentation for financial gain in the past. The record contains multiple credible letters drafted by ex-coworkers and [the] claimant's ex-supervisor that report [the] claimant herself reported that she injured her back at home cleaning her bathroom during the weekend of May 12 to 13, 2007, and that [the] claimant only later alleged she had injured herself at work in order to receive workers compensation benefits. See Ex. 1F; 2F; 3F; 4F.

. . .

Finally, the record contains strong evidence that [the] claimant is unemployed not due to any medical condition, but because she does not actually want to work. In April 2008, during a mental health intake, [the] claimant reported that she was not working, and she was not sure if she wanted to. Ex. 16F/37.

AR 23. The ALJ may consider motivation and the issue of secondary gain in rejecting symptom testimony. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

Plaintiff argues this was not a proper basis for discounting her credibility, because the state agency charged with investigating and administering her workers compensation claim allowed that claim, thereby indicating they did not find a lack of credibility. Defendant notes that plaintiff's workers compensation claim was closed in December 2007, well less than a year

ORDER - 15

after the date of her workplace injury.[4] See AR 38, 166, 447. It is not clear from the record why plaintiff's claim was closed. Nevertheless, the letters from her co-workers speak for themselves as pointed out by the ALJ. See AR 132-37. In early June 2007, furthermore, one of plaintiff's treatment providers commented that she stated she had told that treatment provider "on her first visit when [she was originally seen] that she had been fired for reasons not related to this injury." AR 207. Thus, on this issue the ALJ also did not err.[5]

Lastly, the ALJ discounted plaintiff's credibility on the following basis:

The record also contains numerous inconsistent and contradictory statements made by [the] claimant. In some records, [the] claimant reports her last job ended for reasons unrelated to her alleged work injury (See Ex. 4F), while other records show she reported she was fired because of a work injury. Ex. 13F/4. At the hearing, [the] claimant testified that she could not lift anything that weighed more than a gallon of milk, however, in October 2007 she admitted that she could lift either of her granddaughters who at that time were approximately one and three. Ex. 5F/2. [The c]laimant testified that she is living with her oldest daughter for help with her granddaughters, however, the record shows that [the] claimant has significant conflict with her daughter and has reported to her counselor she is on the list for HUD housing and she would like to get her own apartment when it is financially possible for her to do so. See Ex. 15F.

AR 23. Plaintiff has not challenged this basis for finding her to be not fully credible, nor does the Court find any error in the ALJ's reliance on it to do so. See Smolen, 80 F.3d at 1284 (ALJ

---

[4] To be found disabled, plaintiff must establish that she is unable to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

[5] The Court rejects as well plaintiff's assertion that if her credibility regarding her workers compensation claim "was a concern of the ALJ's he should have contacted [the state agency] for the full record." ECF #11, p. 14. An ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). However, it is only where the record contains "[a]mbiguous evidence" or where the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," that the duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). But the record is neither inadequate nor ambiguous here. Rather, as just noted, the letters and plaintiff's own remarks to her treatment provider call into serious question her credibility with respect to the issue of secondary gain. In addition, plaintiff has not made any showing that there is anything else in her workers compensation record – or that the ALJ could have obtained that record – which would shed any further light on this matter or which plaintiff herself could not have provided.

may consider claimant's inconsistent statements concerning symptoms).

III.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains various lay witness statements, which the ALJ addressed in relevant part as follows:

> The undersigned has considered the third party opinions of record. Ms. Yvonne Claunch reported that [the] claimant's health had declined and that she cannot work due to pain, swelling, trouble sleeping, constant headaches, uncontrolled emotions, and the inability to stand or walk for "any length of time." Ex. 15E. The statements made by Ms. Claunch are considered credible to the extent that she has accurately reported what she has seen, what has been exhibited to her, and what she has been told. However, as she does not have medical and/or vocational expertise, her opinions are of limited value in establishing the claimant's residual functional capacity, or determining how the claimant's impairments affect her overall ability to perform basic work activities. Therefore, the undersigned cannot afford her testimony significant weight as additive evidence to support a finding of disability.
>
> The undersigned has considered the opinions of Teri Hawkins and Jasmine Walker, two of [the] claimant's daughters. Ex. 15E/6. Ms. Hawkins reported that [the] claimant is no longer able to do her grocery shopping without help, and now lives with Ms. Walker for help with her grandchildren. Ms. Walker reported that [the] claimant lives with her, and that [the] claimant cannot do housework and needs help taking care of her granddaughters. Ms. Walker also reported that [the] claimant is depressed and very "irritable and crabby."
>
> The statements made by Ms. Hawkins are considered credible to the extent

ORDER - 17

that she has accurately reported what she has seen, what has been exhibited to her, and what she has been told.  While she is credible, behavior exhibited or symptoms reported by a subject are not an adequate basis to establish disability.  Rather, the undersigned finds there is more reliable evidence of record from medical professionals who are trained to evaluate impairments and their impact on functional capacity.  Ms. Walker's statements were considered but given little weight.  The record suggests Ms. Walker may have an issue of secondary gain as [the] claimant lives with her and her husband, and the record shows that [the] claimant and Ms. Walker have frequent arguments and conflict.  Also, Ms. Walker's statements are inconsistent with those of the claimant.  For example, Ms. Walker reports that [the] claimant cannot do housework, which is inconsistent with [the] claimant's own reports that she cleans, goes shopping, and cooks for her granddaughters.

AR 21-22.[6]  Plaintiff argues the ALJ erred in so finding.  The Court, however, finds any errors on the ALJ's part here to be harmless.

The Court does find the ALJ erred in discounting Ms. Claunch's lay witness statement on the basis that she "does not have medical and/or vocational expertise," making "her opinions of limited value in establishing [plaintiff's] residual functional capacity, or determining how [her] impairments affect her overall ability to perform basic work activities." AR 21-22.  As noted by

---

[6] The record also contains a lay witness statement from Twila Wycherley that the ALJ discounted as well. See AR 22.  However, plaintiff has not challenged the ALJ's findings regarding this lay witness. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).  In addition, for the same reason the Court finds the ALJ's errors in rejecting the lay witness statement of Ms. Hawkins are harmless, so too are any errors committed by the ALJ in regard to the lay witness statement from Ms. Wycherley.

Thus, for example, Ms. Wycherly stated that plaintiff could "no longer do the physical work she used to do, that she took "strong [pain] medicine just to get through each day, that she had "problems" with stooping, bending and lifting, and that she could not participate in "normal family activities" such as fishing and camping. AR 193.  But the ALJ found plaintiff was unable to perform any of her past relevant work (see AR 23).  In addition, the mere fact that plaintiff took strong pain medication does not alone indicate an inability or the presence of significant problems with performing work-related activities.  Nor did Ms. Wycherly describe what "problems" she had with stooping, bending and lifting that were not adequately covered by the ALJ's assessment of her residual functional capacity. See AR 18.  Although Ms. Wycherly did state those problems prevented her from being able to perform "stable employment" (AR 193), "the ultimate determination" as to whether a claimant is disabled is reserved to defendant, and thus even "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean" that he or she will be found to be disabled. 20 C.F.R. § 416.912(b)(7), § 416.927(e)(1).  Lastly, once more there is no indication that an inability to go fishing and camping is inconsistent with the ALJ's assessment of plaintiff's residual functional capacity.

ORDER - 18

United States Magistrate Judge Mary Alice Theiler in a recent case, the Ninth Circuit has rejected this basis for discounting lay witness evidence:

> In [*Bruce v. Astrue*, 557 F.3d 1113 (9th Cir. 2009)], the Court [of Appeals] rejected as improper the ALJ's reasoning that the lay testimony was "not supported by the objective medical evidence." 557 F.3d at 1116. The ALJ in *Bruce* did not point to any specific evidence, contradictory or otherwise, in support of this conclusion. Instead, the ALJ *appeared to discount in general the value of lay testimony in comparison to objective medical evidence.* . . . In [*Smolen*], the Court [of Appeals] noted that the claimant's disability was based on fatigue and pain, that the medical records were "sparse" and did not "provide adequate documentation of those symptoms[,]" and that . . . the ALJ was consequently required to consider the lay testimony as to those symptoms. 80 F.3d at 1288-89. The ALJ in *Smolen*, therefore, had erred in rejecting the lay testimony because " 'medical records, including chart notes made at the time, are far more reliable and entitled to more weight than recent recollections made by family members and others, made with a view toward helping their sibling in pending litigation.' " *Id.* at 1289. As in *Bruce*, the ALJ *essentially rejected the value of lay testimony as compared to objective medical evidence.*

Staley v. Astrue, 2010 WL 3230818 * (W.D. Wash. 2010) (emphasis added). Here too, the ALJ failed to point to specific evidence in support of his findings, but rather in general appeared to discount Ms. Claunch's statement in comparison to the medical evidence in the record. For the same reason, the Court finds the ALJ erred as well in discounting the lay witness statement from Ms. Hawkins because "there is more reliable evidence of record from medical professionals who are trained to evaluate impairments and their impact on functional capacity." AR 22.

The Court, however, further finds these errors to be harmless. An error is harmless if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless if non-prejudicial to claimant or irrelevant to ALJ's ultimate disability determination); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision"). In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant," the Court must "conclude that no reasonable

ORDER - 19

ALJ, when fully crediting testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

With respect to specific work-related limitations, Ms. Claunch stated that plaintiff had an "inability to stand or walk for any length of time," and that "[c]ooking a daily meal puts her down for hours." AR 189. But the first statement is directly contradicted by the objective medical evidence in the record – including the functional assessment of Dr. Rangole – and, as discussed above, plaintiff's own self- reports regarding her ability to perform activities of daily living belie the second statement. Thus, because the weight of the record is inconsistent with the statements of Ms. Claunch, the Court finds no reasonable ALJ would have found differently with respect to plaintiff's alleged disability based on those statements.

In the lay witness statement she provided, Ms. Hawkins wrote in relevant part:

> . . . I have seen my mom go from being able to do housework to not being able to get up without a lot of effort. She isn't able to do her grocery shopping without having someone help her with the lifting and bending. She now lives with my sister who helps her with her grandchildren; by giving them baths because my mom can't bend. My mom loves to go fishing and camping and is no longer able to do that. . . .

AR 191. As with Ms. Claunch's statements, the comments made by Ms. Hawkins concerning plaintiff's ability to do housework, go grocery shopping and take care of her grandchildren are contradicted by plaintiff's own self-reports regarding activities of daily living. In addition, that plaintiff may no longer be able to go fishing and camping is of no real significance, given that the ALJ did not find her to be capable of performing such activities, and that there is no evidence in the record that such an inability is inconsistent with the residual functional capacity assessed by the ALJ discussed in further detail below. Here too, therefore, the Court finds no reasonable ALJ would have come to a different disability conclusion.

As for the lay witness statements provided by Ms. Walker, the Court agrees with plaintiff

ORDER - 20

that it was improper for the ALJ to reject those statements on the basis that there may be an issue of secondary gain. While it may be there has been conflict between plaintiff and Ms. Walker, there is no indication in the record that plaintiff actually has sought benefits as a way of avoiding those conflicts or separating from her daughter. Rather, this appears to be merely speculation on the part of the ALJ, and the Court declines to uphold his determination on this basis. On the other hand, once more as with the other two lay witness statements discussed above, the ALJ did not err in rejecting Ms. Walker's statements on the basis that her claim that plaintiff was unable to perform housework is inconsistent with plaintiff's own self-reports.

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Accordingly, defendant's decision to deny benefits is hereby AFFIRMED.

DATED this 19th day of April, 2012.

Karen L. Strombom
United States Magistrate Judge